## 18719.   GOLDIN *v.* THE STATE.

DECIDED APRIL 10, 1928.

*E. S. Griffith,* for plaintiff in error.

*S. W. Ragsdale, solicitor-general,* contra.

LUKE, J. The indictment charged that on July 5, 1927, Dave Goldin and Thomas Harper committed an assault with intent to murder upon George Reel by driving a Ford coupé automobile against him. The jury found Goldin guilty of the offense charged, the court overruled the motion for a new trial, and the defendant excepted.

Mable Felkins testified substantially as follows: On July 5 she and her uncle, George Reel, were walking to Atlanta on the highway running from Bremen towards Atlanta. As they were passing a house two men "hollered," one saying, "Wait a minute there, buddy." They paid no attention to the remark and continued to walk down the road. The men got in an automobile, and, overtaking the pedestrians, asked them to ride. Reel politely declined the invitation. The men, who were in a Ford coupé, ran on down the road about one hundred yards and stopped. When they came up with the men, Goldin, holding a long knife in his hand, told Reel he could not go another step. Reel replied that he was going on about his business. Goldin then motioned to Harper, who told the witness to get in the car. She ran down the road, with her uncle following close behind her. Goldin said he would "get the sons of bitches." The two men jumped in the car and started "with all their speed." Reel said, "Let's make it to the railroad, if we can." Where the incident occured there was a fill in the road. When the car started it was in the middle of the road, but just as the witness jumped into the briars "they dipped in after". Reel. Witness and her uncle were running as near the edge of the road as they could get, and the tracks of the car were as close to the edge of the road as they could get. Witness had not seen Goldin before, but identified him at the trial.

Dr. M. H. Stephens testified: that he saw Reel after he was struck; that he was unconscious, bleeding from the nose and ears, and had a fractured skull; that it would take considerable force to injure him as he was; that shoving a man down on the road would not likely cause such damage as Reel received, since the road was an ordinary dirt highway; that more than six days after the occurrence Reel was perfectly dormant, and could not be waked up; that a Ford might be an instrument likely to produce death, since "some people are killed that way."

Bott Barrett testified: that he witnessed the occurrence—"seen the lady in front and the man right behind her," both running; that as a man on the ground got back in his automobile he said, "I'll see you again, God damn you, and I wont be long about it;" that "he went on down the highway, and in place of passing them, he whipped around and knocked the old gentleman down," the lady jumping in the ditch among some briars; that the pedestrians

were on the right-hand edge of the highway; that it appeared to the witness that the car knocked the man about twenty feet; that the car never stopped; that the place where it hit the gentleman was right on the edge of the road; that if the defendant had driven his car straight down the road and had not turned suddenly, he would not have hit the man; that after striking the man the defendant turned to pass Mr. Spruell.

J. M. Spruell testified that as he was coming from Atlanta, he heard "hollering," and saw a man and a woman running, and a Ford car close behind them; that the car "hit the man and knocked him a good ways, and the woman jumped off of the fill into the briar patch;" that witness stepped the distance, and "it was about eight steps that the car knocked the man;" that blood was "spouting out of his ear," and he was unconscious; that the girl and the man were "just as close to the right-hand side of the road as they could go without going over, "and the man made no turn to get in the middle of the road;" that the car came back to the middle of the road and slowed down, and then "picked up," and then went out of sight running very fast; that there "was plenty of room on the other side for the car to pass without striking" the man; that the road was about twenty-five feet wide where the man was struck; and that witness was about fifty yards from the parties when he first saw them.

J. W. Watts testified that "these parties came along about 12:30;" and that he heard cursing at the Summerville home. Pearl Summerville testified: that Goldin and Harper were at her home on the day in question; that she heard Goldin holler to the girl and the old man that he would let them ride; that she did not know whether Goldin was drinking or not, but thought he cursed a little bit. J. H. Davenport testified that he saw the defendant between two and three o'clock on the day the man was hurt, and that "seemingly he was drinking;" that his face was flushed, but he was orderly.

G. B. Richards arrested the defendant late in the afternoon of the day Reel was hurt, and took him by his home to see his people. The defendant escaped, but was caught again the same afternoon. Witness smelled whisky on the defendant. W. H. Swint testified that he drove the defendant's car to his house the day he was

arrested; that he thought he was drinking—found a pint bottle half full of whisky in the car.

The defendant stated the girl and Reel were ahead of him on the right side of the road, and that, just before he overtook them, Reel undertook to cross the road; that he tried to avoid hitting him in every way possible, but could not do so; that he thought the car only scraped the man, and did not know that he was hurt, or he surely would have stopped; that, furthermore, he didn't know but what "the man might get up shooting at him;" that he had no knife, and was not drinking; that Mr. Spruell was almost upon him, and he "had to make connection there to miss that man and miss these people;" and that the "accident" was unavoidable.

Unquestionably the jury had the right to believe that after vilely cursing and threatening the young woman and the man, the defendant deliberately ran them down with his automobile, and intentionally struck the man with sufficient force to knock him twenty feet, fracture his skull, cause blood to flow from his ears and nose, and render him unconscious for several days. The defendant's statement that the occurrence was unavoidable because Reel tried to cross the road in front of him is unequivocally contradicted by several witnesses, and no witness confirms his statement to that effect. The evidence supplies every ingredient necessary to constitute an assault with intent to murder, and it is hard to conceive how the jury could have found him guilty of any lesser offense.

The first ground of the amendment to the motion for a new trial complains that the court failed to charge the law of assault and battery. If the evidence for the State is true, the defendant was guilty of assault with intent to murder, and nothing less. If all the evidence in the case is false, and the defendant's statement is true, the occurrence was an accident. There appears to be no middle ground—no place for an assault and battery. In the case of *Kendrick* v. *State,* 113 *Ga.* 761 (39 S. E. 286), Justice Fish, speaking for the entire court, lays down the rule that "in a case where the evidence for the State, if believed by the jury, demands a verdict of guilty of the crime charged in the indictment, and the evidence for the accused, if accepted as true, demands an absolute acquittal, a verdict finding him guilty of a lesser offense of the same

114

general character is contrary to evidence and to law." We deem this rule applicable to the case at bar, and hold that the court did not err in not charging the law of assault and battery.

Grounds 2 and 3 of the amendment to the motion for a new trial, the first complaining of the admission of evidence that the defendant was drinking at about five o'clock on the day of his arrest, and the second of the admission of evidence that he was drinking and had whisky in his automobile when caught about five hours after striking the man with his car, are without merit.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*